

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

January 2, 2024

**BY ECF**

Honorable Ronnie Abrams
United States District Judge
Southern District of New York
40 Foley Square
New York, NY 10007

    Re:   *United States v. Darius Paduch*, 23 Cr. 181 (RA)

Dear Judge Abrams:

    The parties respectfully submit this letter to clarify the redaction request of December 21, 2023 and to continue the redactions implemented by the Court on December 22, 2023.

    On April 19, 2023, former counsel for the defendant submitted a motion seeking bail pending trial (the "April Bail Motion"). In the April Bail Motion, counsel identified by name three "prospective co-signers" of a personal recognizance bond for the defendant. *Id.* One of the proposed co-signers was a young man ("Male-1") who "met Dr. Paduch as a patient when he was 13 years old." According to the April Bail Motion, Male-1 went on to intern for the defendant and purportedly collaborated professionally with him. *Id.* On April 20, 2023, Judge Willis denied bail, noting that the proposed co-signers—none mentioned by name—allayed the court's concerns about flight but could not overcome its concerns about dangerousness. Current counsel appealed the magistrate court's denial of bail. (Dkt. 11) (the "May Bail Motion"). In connection with the May Bail Motion, counsel "incorporate[d] and relie[d] upon the submission made to Judge Willis." (Dkt. 21). While the May Bail Motion did not mention proposed co-signers by name, the motion appended the April Bail Motion, which had been submitted by former counsel and included the identity of Male-1. On May 24, 2023, this Court denied bail without reference to the co-signers. (Dkt. 26).

    Based on recent communications with counsel for Male-1, the Government understands that, prior to the April Bail Motion, an individual acting on behalf of the defendant contacted Male-1 and asked whether he would speak to former counsel for the defendant. Male-1 agreed. During a single phone call, former counsel asked Male-1, in sum and substance, whether he would be willing to "help a friend." While former counsel mentioned a "bond," counsel did not use the term "surety." Furthermore, Male-1 has clarified that he is not—and was not then—in a financial position to have paid the defendant's bond, if required. To this day, Male-1 insists, he does not know what concrete help former counsel sought from him.

In part because Male-1 did not understand himself to be guaranteeing a prospective bond for the defendant, counsel for Male-1 requested that his name be removed from the public docket. Current defense counsel promptly obliged, requesting to redact the identification of Male-1 in the May Bail Motion.

Assuming that individual bonds are judicial documents to which a qualified right of access applies, this case stands apart from *United States v. Bankman-Fried*, 2023 WL 1108471, at *4 (S.D.N.Y. Jan. 20, 2023).[1] Male-1 never became a surety, unlike the non-parental sureties sworn to bond in *Bankman-Fried*. *Id.* at *1 ("The non-parental sureties and defendant signed the Individual Bonds on January 25, 2023 and January 27, 2023, respectively. Copies of the bonds, albeit with the sureties' names redacted subject to this decision, are publicly available."). Indeed, Male-1 never understood the role of a "surety," much less raised his hand to assume it. For that reason alone, the decision in *Bankman-Fried* does not pertain, and redaction is proper.

Even if this court were to find a presumption of access as to the identity of Male-1, that presumption would be weaker than the presumption in *Bankman-Fried*, which the district court described as "not strong." *Id.* at *3. Moreover, the "privacy interests of those resisting disclosure, including the nature and degree of injury resulting from disclosure" would significantly outweigh any presumption of access. *Id.* Male-1 was a minor when the defendant began treating him. While the bail motions did not detail Male-1's treatment, the defendant's practice specialty—male infertility and andrology—itself provides sensitive and potentially embarrassing information regarding Male-1's health. That the defendant is alleged to have engaged in the charged conduct while treating certain patients only compounds the potential for embarrassment to Male-1.

---

[1] This case also differs from *United States v. Graham*, 257 F.3d 143, 154 (2d Cir. 2001), in which the Second Circuit held that a strong presumption of access applied to certain audio and video tapes that were the "primary basis for the district court's decision to detain the defendants pending trial." Although Judge Willis noted that the bail package proposed in the April Bail Motion, "with the cosigners, the three who were proposed and perhaps one additional one, and tying up a substantial portion of [the defendant's] assets" would allay the court's concern about risk of flight, this Court made no mention of the co-signers in announcing its decision on May 24, 2023 to deny bail on both risk of flight and dangerousness. Put simply, if the existence of Male-1 as a potential surety played any role in this Court's decision regarding bail, it was not likely to have been a substantial one.

For the foregoing reasons, the Government respectfully requests that the Court maintain the redactions entered on December 22, 2023. Defense counsel consents to this request.

Very truly yours,

DAMIAN WILLIAMS
United States Attorney

by: _____
Marguerite B. Colson
Elizabeth A. Espinosa
Jun Xiang
Assistant United States Attorney
(212) 637-2587 | -2216 | -2289