

BALDASSARE & MARA, LLC

<u>VIA ECF</u>

October 23, 2024

The Honorable Ronnie Abrams,
 United States District Judge
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:   <u>United States v. Darius A. Paduch,</u> Case No. 1:23-cr-00181

Dear Judge Abrams:

     This firm represents Dr. Darius Paduch. Please accept this letter brief in support of Dr. Paduch's Motion for a New Trial. The basis for this motion, and the need for a new trial, is laid at the feet of the Metropolitan Detention Center because (as discovered far after the trial concluded) the MDC ignored two Court orders and withheld discovery from Dr. Paduch.[1]

**I.**    **FACTUAL BACKGROUND**

     <u>December 13, 2023</u>: The Court enters Laptop Order 1. ECF 41.

     <u>March 8, 2024</u>: Due to MDC's repeated refusals to comply with Laptop Order 1, the Court issues Laptop Order 2. ECF 64.

     <u>April 1, 2024</u>: Based upon MDC's refusal to comply with Laptop Order 1 or 2, the defense files an Order to Show Cause seeking to hold MDC's warden in contempt and for other relief. ECF 82, 83.

---

[1] To be clear, Dr. Paduch does not claim that the government withheld evidence from defense counsel. Rather, and notwithstanding that the evidence at issue had been produced to the defense before trial, MDC ignored this Court's Order and never gave the discovery to Dr. Paduch until months after his conviction.

April 4, 2024:  Following the defense's filing, the Court enters Laptop Order 3, which requires MDC, on a daily basis, to inform the Court, the defense and the government of its compliance with the relief set forth in Laptop Order 3.  ECF 87.

April 10, 2024:  The government sends a hard drive (the "Concealed Hard Drive") containing medical records and statements of testifying witnesses to MDC for Dr. Paduch to use to prepare for his trial.  The government instructs MDC to "keep this hard drive with the defendant's laptop."  D1.

April 11, 2024:  At 11:19 a.m., the government confirms that the Concealed Hard Drive had been sent to Dr. Paduch.

April 12, 2024:  The Concealed Hard Drive is delivered to MDC at 11:09 a.m.  D2.  Also, on this date, MDC represents to this Court, the defense and the government that Dr. Paduch has been given access to all discovery.  D7, 9.

April 15, 2024:  MDC's Legal Department concludes the Concealed Hard Drive has been "inspected and cleared for issue" and authorizes its release to Dr. Paduch.  D4.  The release form is signed on this date by "Lewis."  *Id.*  ***(In fact, and as detailed herein, the Concealed Hard Drive is not provided to Dr. Paduch until August 21, 2024, i.e., 105 days after the verdict.  D4.)*** Also on this date, MDC represents to this Court, the defense and the government that Dr. Paduch has been given access to all discovery.  D8.  It bears noting that this occurred less that two weeks after Laptop Order 3.

April 16, 2024:  MDC represents to this Court, the defense and the government that Dr. Paduch has been given access to all discovery.  D8, 10.

April 17-19, 2024:  MDC updates the Court, the defense and the government on Dr. Paduch's access to discovery.  D8, 10-14.  (Dr. Paduch was in court on April 17.)

April 22, 2024:

- *9:54 a.m.*:  The defense asks the government for tracking information for the Concealed Hard Drive because Dr. Paduch had not received it.  D2-3.
- *9:58 a.m.*:  The government provides the tracking number and a FedEx screenshot showing that the Concealed Hard Drive had been delivered back

2

    on April 12, 2024, at 11:09 a.m.  D3.

- *10:09 a.m.*:  The defense informed MDC attorneys that the drive had been delivered.  D5.  The MDC ignored the information and never responded.  D5.  Dr. Paduch was provided access to other discovery (but not the Concealed Hard Drive) on this day.  D8.  The government forwarded to defense counsel and the Court an email from MDC regarding Dr. Paduch's access to discovery.  D11-12.

  April 23, 2024:  MDC represents to this Court, the defense and the government that Dr. Paduch has been given access to all discovery.  D8, 13.

  April 24, 2024:  Jury selection begins and the trial commences.

  April 26, 2024:  Once again, the defense contacts MDC regarding the Concealed Hard Drive.  MDC ignores this request for information.  D5.

  April 30, 2024:  Eight days after the defense's original request and four days after the defenses' second request, MDC responds, providing a two-sentence response that has nothing to do with the Concealed Hard Drive.  Rather, and as is typical of MDC's lack of attention and/or complete obtuseness, MDC responds to a question never posed by the defense or, for that matter, anyone else involved in Dr. Paduch's case.  D5.

  May 8, 2024:  The jury returns a guilty verdict on all counts.  ECF 131.

  August 21, 2024:  Three months after the verdict, Dr. Paduch is taken to the Unit Team's Office and given the Concealed Hard Drive, a cable, form BP-A0331 (which admits that the Concealed Hard Drive had been cleared for production to Dr. Paduch back on April 15, 2024), and the government's April 10, 2024 letter to MDC enclosing the Concealed Hard Drive.  D1, 4, Exhibit A.

## II.  APPLICABLE LEGAL STANDARD

  Federal Rule of Criminal Procedure 33 states in pertinent part:

> Upon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires.

Where, as here, a defendant's motion relies upon the discovery of new evidence, the defendant must establish that:

3

> (1) the evidence [was] newly discovered after trial; (2) facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence would likely result in an acquittal.

*United States v. Forbes*, 790 F.3d 403, 406-07 (2d Cir. 2015).

### III.     THE MOTION SHOULD BE GRANTED.

The motion should be granted because Dr. Paduch has established the five requisite elements set forth in *Forbes*. <u>First</u>, there is no question that – as to Dr. Paduch whose life is on the line – the information on the Concealed Hard Drive was newly discovered months after his conviction. *United States v. Rosemond*, 958 F.3d 111, 120 (2d Cir. 2020) (noting that "'the defendant, and not his lawyer or the State, will bear the personal consequences of a conviction.'") (quoting *Faretta v. California*, 422 U.S. 806, 834 (1975)). The timeline is clear and, as to the individual with the most at stake in this proceeding, the information might as well have been discovered years in the future given that it came months after trial.

<u>Second</u>, Dr. Paduch has provided facts "from which the court can infer due diligence on the part of the movant to obtain the evidence." *Forbes*, 790 F.3d at 406-07. Dr. Paduch repeatedly fought for access to his discovery, even taking the aggressive stance in filings that MDC's warden should be held in contempt. ECF 82, 83 & 86. Dr. Paduch obtained not one, but two additional Laptop Orders even though one should have been sufficient to provide him with access to discovery. The two additional Laptop Orders were due to MDC's refusal to comply with the Court's Orders. The defense made immediate and repeated attempts to discern the status of the Concealed Hard Drive and received and relied upon MDC's numerous subsequent representations to the Court that Dr. Paduch had been provided with all discovery. These are more than sufficient – and undisputed – facts to establish Dr. Paduch's due diligence.

<u>Third</u>, the discovery on the Concealed Hard Drive is clearly material for several reasons. In the first instance, Dr. Paduch has provided this Court with his statement that he was not able to consider the discovery on the Concealed Hard Drive in time to participate in his own defense and prior to making his decision on whether to testify in his own defense. Exhibit A. *Williams*

*v. United States*, 707 F. Supp. 3d 251, 260-261 (W.D.N.Y 2023) (stating that "Finally, with respect to the allegations concerning Petitioner's right to testify, there is no question but that 'a defendant in a criminal case has the right to take the witness stand and to testify in his or her own defense'") (quoting *Rock v. Arkansas*, 483 U.S. 44, 49 (1987)). The decision on whether to testify is, of course, a bedrock constitutional principle that is within the purview of the defendant alone. *United States v. Schaffer*, No. 8:22-CR-293, 2024 U.S. Dist. LEXIS 75140, at *8 (N.D.N.Y. 2024) (stating that "the client retains decision-making authority over fundamental aspects of the defense: only the defendant can decide whether to … 'testify in one's own behalf, and forgo an appeal'") (quoting *McCoy v. Louisiana*, 584 U.S. 414, 422 (2018)). That much is clear and cannot be disputed.

Further regarding materiality, the Concealed Hard Drive contains documents never before provided to Dr. Paduch related to witnesses who testified at trial and thus, his ability to work with counsel on cross-examination was hindered for a number of witnesses.[2] Cross-examination has been called "the greatest legal engine ever invented for the discovery of truth." *Grayton v. Ercole*, 691 F.3d 165, 171 (2d Cir. 2012) (quoting *California v. Green*, 399 U.S. 149, 158 (1970)). "The opportunity for cross-examination, protected by the Confrontation Clause, is critical for ensuring the integrity of the fact-finding process. Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested." *Id*. at 171 (quoting *Kentucky v. Stincer*, 482 U.S. 730, 736 (1987)) (internal quotations and citations omitted). Had Dr. Paduch been provided with this information, as required by Laptop Order 3, he would have had ample time to participate in his own defense. *United States v. Fishenko*, 2014 U.S. Dist. LEXIS 155360, *5 (E.D.N.Y. Nov. 3, 2014) (noting that defendant has the right to discovery even if it is classified for national security reasons). *See also Faretta*, 422 U.S. at 819 (observing that the Sixth Amendment "does not provide merely that a defense

---

[2] The medical records of Tucker Coburn contained on the Concealed Hard Drive are an exception. Those documents, in fact, had been previously produced to Dr. Paduch. They had to be re-produced on the Concealed Hard Drive because of technical issues with the original production.

shall be made for the accused; it grants to the accused personally the right to make his defense"). "'The right to defend is personal. The defendant, and not his lawyer or the State, will bear the personal consequences of a conviction.'" *Rosemond*, 958 F.3d at 120 (quoting *Faretta*, 422 U.S. at 834).

The Concealed Hard Drive contained medical records for and/or communications regarding the following individuals, many of whom testified at trial: [3]

- Testified at trial: Sam Lenox (email communications with Dr. Paduch and medical staff) (Counts One and Eight);
- Testified at trial: Krista Bevin (email communications) (mother of Luke Bevin (Counts Two and Nine));
- Testified at trial: James Brent (text messages with Dr. Paduch) (Count Seven);
- Testified at trial: Nate Koven (medical records) (413 witness);
- Testified at trial: Tucker Coburn (medical records) (413 witness);
- Testified at trial: Tim Douglas (text messages with Dr. Paduch) (413 witness);
- Did not testify at trial: Dan Stoddart (text messages; emails, one letter) (413 witness) and;
- Did not testify at trial: BB (no pseudonym) (medical records) (413 witness).

The material on the Concealed Hard Drive is particularly noteworthy because the testifying 413 witnesses were not formally identified until the eve of trial. Thus, Dr. Paduch proceeded to trial without the information on the Concealed Hard Drive.

*Fourth*, the discovery on the Concealed Hard Drive was not "merely cumulative or impeaching[.]" *Forbes*, 790 F.3d at 407. Dr. Paduch had not received this information before. Thus, it is axiomatic that the material is not cumulative in the sense that Dr. Paduch was unable to consider this evidence in light of all the other discovery to determine what he thought should, or should not be used at trial. Dr. Paduch may have used the information on the Concealed Hard Drive instead of available discovery at trial. Nor is the Concealed Hard Drive merely useful for impeachment material. The medical records, comprising approximately 2,200 pages, are unlike standard discovery. Medical records require an expert – such as Dr. Paduch – to review and explain to counsel, as well as to incorporate into an effective defense beyond impeachment,

---

[3] Where applicable, the witnesses are identified by the pseudonym under which they testified.

particularly for the individuals named in the substantive counts. Dr. Paduch was robbed of the opportunity to participate in his own defense in this matter. And, of course, Dr. Paduch had no chance to decide to use that information to make affirmative points in his defense, whether through other witnesses or his own testimony.

*Fifth*, this information would likely have resulted in an acquittal. *Id*. at 407. Certainty is not required; rather, this Court has broad discretion to make the determination:

> Under Federal Rule of Criminal Procedure 33, a district court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). We review the denial of a Rule 33 motion for abuse of discretion. *United States v. Vinas*, 910 F.3d 52, 58 (2d Cir. 2018). In evaluating a Rule 33 motion, "[t]he district court must examine the entire case, take into account all facts and circumstances, and make an objective evaluation." *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001). The district court must also "strike a balance between weighing the evidence and credibility of witnesses and not wholly usurping the role of the jury." *Id.* at 133 (internal quotation marks and alteration omitted). "The ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." *Id.* at 134.

*United States v. Turner*, 2023 U.S. App. LEXIS 20674, *10 (2d Cir. Aug. 9, 2023)

Dr. Paduch's testimony – had he been able to make a fulsome evaluation of the information on the Concealed Hard Drive – would likely have resulted in an acquittal. He was in the best position to explain the medical records, the medical treatment, and the communications. Absent this information, his decision not to testify was not fully informed of all the evidence in the government's possession.

### IV.    CONCLUSION

For all of the foregoing reasons, the Court should grant Dr. Paduch's motion for a new trial.

Respectfully,

Michael Baldassare