

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza*
*New York, New York 10278*

October 25, 2024

**BY ECF**
The Honorable Ronnie Abrams
United States District Judge
Southern District of New York
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

      Re:    <u>United States v. Paduch</u>, S2 23 Cr. 181 (RA)

Dear Judge Abrams:

      The Government respectfully submits this letter in opposition to the defendant's motion for a new trial under Rule 33 of the Federal Rules of Criminal Procedure. The motion rests on what the defendant characterizes as "newly discovered evidence"—specifically, a hard drive of materials that the Government produced before trial (the "Materials").

      As discussed below, the Materials are not newly discovered. There is no dispute that the Government timely produced the materials to defense counsel and the defendant's detention facility (the "MDC") before trial. The defendant cannot show how the alleged failure of the MDC to provide him the Materials caused him any prejudice, much less the likelihood of acquittal. The motion fails as a matter of law.

    **I.**   **Relevant Facts**

      On April 10, 2024, the Government sent the MDC a hard drive containing the Materials, with directions that the Materials be made available to the defendant. The Materials consisted of materials across several productions that the Government had previously produced to defense counsel.

      Specifically, the Materials consisted[1] of:

| Bates Range (Prefix Omitted) | Description | Date of Production to Defense Counsel |
|---|---|---|
| 136545 – 136643 | Krista Bevin Emails (the "KB Emails") | March 22, 2024 |

---

[1] Should the Court find it necessary to review the Materials, the Government is happy to make them available to the Court via USAfx.

| 136644 – 136644 | Tim Douglas Text Message (the "TD Text") | March 22, 2024 |
| 136645 – 136649 | Sam Lenox Emails (the "SL Emails") | March 22, 2024 |
| 139686 – 139889 | James Brent Text Messages (the "JB Texts") | April 9, 2024 |
| 136384 – 136403 | Texts and Emails with Non-Witness Victim DS (the "DS Communications") | March 11, 2024 |
| 002266 – 002783 | Medical Records for Tucker Coburn (the "TC Medical Records") | June 12, 2023 |
| 136199 – 136383 | Medical Records for Nate Klavin (the "NK Medical Records") | March 11, 2024 |
| 136659 – 138150 | Medical Records for Non-Witness Victim BB (the "BB Medical Records") | March 29, 2024 |

Shortly after the Government sent the Materials to the MDC, the Government provided the cover letter accompanying the Materials to defense counsel.

On April 22, 2024, the defense advised the Government that the defendant had not yet received the Materials, and the Government provided the tracking number and delivery confirmation to defense counsel. Until the defense's motion two days ago, the Government received no further inquiry from the defense regarding the Materials.[2]

The non-witness victims DS and BB did not testify at trial, and no facts pertinent to either of them were presented to the jury. The remaining Materials pertained to trial witnesses and, as reflected below, were separately marked and produced either as Government Exhibits or Jencks Act material:

| Materials | Separate GX or Jencks Act Designation/Production |
|---|---|
| KB Emails | 3527-002, 003 |
| TD Text | GX 405 |
| SL Emails | 3553-014, 015, 016, 017, 018, GX 701 (one of the emails) |
| JB Texts | GX 410 |
| TC Medical Records | GX 215 |
| NK Medical Records | GX 211 |

The defendant does not contend that he was deprived of access to the Government Exhibits or Jencks Act materials produced before and during trial.

With the exception of the KB Emails and some of the SL Emails, each of the Materials was admitted as a Government Exhibit at trial; and the TD Text and JB Texts were the subject of testimony by Tim Douglas and James Brent. (Tr. 114 (GX 211 and 215), 703 (GX 405), 909 (GX 410).) While the KB Emails and SL Emails were not offered as exhibits, the topics they cover were the subject of testimony as well. The KB Emails document Krista Bevin's efforts to secure medical treatment for her son, Luke Bevin, from the defendant. (Tr. 424–434.) The SL Emails

---

[2] For purposes of this motion, the Government presumes the truth of the defendant's assertion that the defendant did not receive the Materials until August 21, 2024.

are on-boarding emails between Sam Lenox and employees at Weill-Cornell in connection with Lenox's summer internship, about which he testified; one of the emails, from the defendant to Mr. Lenox, was admitted as GX 701. (Tr. 125–129, 155–160.)

At no point during any witness testimony or the admission of any of the above Government Exhibits did the defendant alert the Court or the Government that he was seeing these Materials for the first time. Defense counsel used the NK and TC Medical Records at trial, including during the cross-examination of Dr. Amin Herati. (Tr. 414.)

## II. Applicable Law

Federal Rule of Criminal Procedure 33 authorizes a court to "vacate any judgment and grant a new trial if the interest of justice so requires," upon the motion of a defendant. Where such a motion rests on a claim of newly discovered evidence, the defendant must prove that: "(1) the evidence was newly discovered after trial; (2) facts are alleged from which the court can infer due diligence on the part of the movant to obtain the evidence; (3) the evidence is material; (4) the evidence is not merely cumulative or impeaching; and (5) the evidence would likely result in an acquittal." United States v. Forbes, 790 F.3d 403, 406–07 (2d Cir. 2015) (citation, brackets, and quotation marks omitted). The Second Circuit has long held that such motions should be granted "only with great caution" and "in the most extraordinary circumstances." Romero v. United States, 28 F.3d 267, 268 (2d Cir. 1994) (citation and quotation marks omitted); United States v. Alessi, 638 F.2d 466, 479 (2d Cir. 1980) (quotation marks omitted).

The purpose of Rule 33 is to address "a real concern that an innocent person may have been convicted," United States v. Sanchez, 969 F.2d 1409, 1414 (2d Cir. 1992), and the "ultimate test on a Rule 33 motion is whether letting a guilty verdict stand would be a manifest injustice." United States v. Ferguson, 246 F.3d 129, 134 (2d Cir. 2001).

## III. Discussion

The defendant's motion fails as a matter of law on a number of grounds.

First, the defendant does not dispute that the Materials were in the actual possession of counsel before trial. It follows that the Material were not "newly discovered after trial." The defendant wishes to draw a distinction between the Materials being provided to counsel and the Materials being provided to him personally. The law recognizes no such distinction. Because defense counsel is the defendant's agent, counsel's receipt of the Materials is equivalent to receipt by the defendant himself. For this reason, in cases addressing alleged discovery violations, courts have commonly characterized production of discovery materials "to defense counsel" as sufficient to meet the Government's discovery obligations to the defendant. E.g., United States v. Monsanto Lopez, 798 F. App'x 688, 690 (2d Cir. 2020) ("As it gathered additional evidence shortly before trial, that evidence was promptly produced to defense counsel."); In re Terrorist Bombings of U.S. Embassies in E. Afr., 552 F.3d 93, 126 (2d Cir. 2008) ("Our understanding that production of materials to a party's attorney alone falls within the common meaning of 'discovery' further strengthens our conviction that the discovery restrictions imposed by the District Court were perfectly appropriate and valid . . . ."); cf. United States v. McKeon, 738 F.2d 26, 33 (2d Cir. 1984)

(noting that attorney functions as agent of the client, such that attorney's trial statements are usable as admissions against the client). While the Government elects in some cases—including this one—to provide discovery to the defendant as a courtesy, that is not required by the law.

Second, the defendant failed to exercise due diligence. There is no question that defense counsel was aware by April 22, 2024 that the defendant had not received the Materials. Counsel contacted the MDC on April 22 and April 26. In its email of April 22, counsel stated that he "did not believe the discovery was uploaded to the laptop." Presumably counsel formed that belief only after discussing the existence of the Materials with the defendant. In other words, the defendant would have known of the existence of the Materials prior to his counsel's email of April 22. It does not appear that the defendant—who was given almost daily access to discovery materials in the leadup to trial—made attempts after April 26 to locate the Materials before or during trial. To the extent that the defendant believed there to be some discovery that his attorneys possessed but that he did not, nothing prevented him from asking his counsel to bring the Materials to him so they could discuss. Just as importantly, when certain of the Materials were admitted as Government Exhibits at trial (or marked as Jencks Act material separately produced to the defense), the defendant never alerted the Court or the Government that he was seeing these Materials for the first time.

Third, the Materials are not the least bit helpful to the defendant. The KB Emails and SL Emails do not bear, one way or the other, on the central dispute at trial: whether the victims were lying about their abuse in the hands of the defendant. If anything, those emails strongly corroborate Krista Bevin's and Sam Lenox's testimony. The TC and NK Medical Records are of a piece with the other medical records introduced at trial, and defense counsel used all of the medical records (including TC's and NK's) to argue, among other things, that the Government's expert witnesses lacked a basis for their opinions about the propriety of the defendant's conduct. (Tr. 414.) Finally, Tim Douglas and James Brent testified about their respective text messages with the defendant—messages in which the defendant repeatedly referenced his sexual touching of those witnesses. (Tr. 703, 909.) Put simply, the Materials were damning pieces of evidence in a trial in which the Government's case was overwhelming. This is not a case in which there is a "real concern that an innocent person may have been convicted." Sanchez, 969 F.2d at 1414.

The defendant does not even attempt to articulate how his personal receipt of the Materials would have led to the *likelihood* of an acquittal. It is telling that, despite finding the Materials in August 2024 and not making his motion until two days ago, the defendant cannot articulate any way in which he and counsel would have conducted trial differently. The defendant alludes broadly to the importance of cross-examination and the weightiness of his decision not to testify in his own defense, but he does not articulate a single line of cross-examination that would have gone differently or how the Materials would have altered his decision not to testify. See, e.g., United States v. Cristobal, No. 23-6107, 2024 WL 1506750, at *5 (2d Cir. Apr. 8, 2024) (finding that defendant failed to establish prejudice prong of Brady claim where she "does not identify any pages, individually or in the aggregate, that she would have used at trial"); United States v. Malachowski, 09 Cr. 125, 2018 WL 11300483, at *15 (N.D.N.Y. June 11, 2018) (rejecting defendant's prejudice argument as "based on nothing more than airy generalities and conclusory assertions").

To the extent that any of the Materials are conceivably helpful to the defendant, they are at most cumulative and impeachment material. For example, the KB Emails could have been used by the defense to suggest that Krista Bevin thought highly of the defendant. Similarly, the SL Emails could have been used by the defense to argue that Sam Lenox looked forward to his summer internship. But those were facts that were already evident from the testimony of Mr. Lenox and Ms. Bevin. (Tr. 125–129 (testimony of Sam Lenox), 428–430 (testimony of Krista Bevin).) Consequently, the defense had all of the information necessary to make strategic choices about whether and to what extent to cross on these topics.[3] Even if the defense had further developed those themes through the relevant emails, there is no possibility that doing so would have altered the jury's verdict on any count.

### IV. Conclusion

For the reasons above, the defendant's motion is meritless and should be denied.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York

by:     /s/  Jun Xiang
Marguerite B. Colson / Elizabeth A. Espinosa
Jun Xiang / Ni Qian
Assistant United States Attorneys
(212) 637-2587 / -2216 / -2289 / -2364

**CC**
Counsel of Record

---

[3] And, as noted above, these emails were separately produced to the defense as Jencks Act material.